**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

COLONY INSURANCE COMPANY,     :
             :
       Plaintiff,     :
             :
             :
       v.          :   Civil Action No.: _____
             :
             :
ASPEN SPECIALTY INSURANCE COMPANY  :
and DIVE BAR DIVA, LLC t/a THE ALIBI ROOM  :
             :
       Defendants.     :
             :

_____

Plaintiff, Colony Insurance Company, by and through its undersigned counsel, files this Complaint for Declaratory Judgment against defendants Aspen Specialty Insurance Company ("Aspen") and Dive Bar Diva, LLC t/a The Alibi Room ("DBD") alleging as follows:

**NATURE OF ACTION**

1.     In this action, Colony seeks a declaration regarding the respective rights and obligations of Aspen and Colony to provide DBD with insurance coverage against certain claims alleged in a lawsuit styled _Iannaco v. Dive Bar Diva, LLC, et al_., Index No. CAM-L-566-18, which is pending in the New Jersey Superior Court, Camden County ("the Underlying Action").

2.     Aspen has been defending DBD in the Underlying Action subject to a reservation of rights under an Aspen primary policy of insurance that affords both commercial general liability and liquor liability coverages.

3.     Aspen has issued "Notice of Pending Exhaustion" letters to both DBD and Colony – the issuer of excess liability coverage in the layer immediately above the Aspen primary policy

– advising them of Aspen's position as to the available limits remaining under its primary policy with which to satisfy any judgment that might be entered against DBD in the Underlying Action or with which to negotiate and fund a settlement resolving the claims against DBD.

4.      A dispute has arisen between Colony and Aspen regarding, *inter alia*, the manner in which the limits in the Aspen primary policy apply and the amount remaining, and Colony seeks a declaration, in part, that the $1 Million limits in the Aspen policy applicable to certain liquor liabilities, including the potential liquor liability at issue in the Underlying Action, are not aggregate limits as Aspen contends, but rather, apply on a per location basis. DBD has a potential interest in the adjudication of this issue and therefore is named as a defendant.

## THE PARTIES

5.      Plaintiff Colony is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business located in Richmond, Virginia.

6.      Defendant Aspen is a corporation organized and existing under the laws of the State of North Dakota, with its principal place of business located in Rocky Hill, Connecticut.

7.      Defendant Dive Bar Diva, LLC is a limited liability company formed and organized under the New Jersey Limited Liability Company Act. Dive Bar Diva, LLC owns and operates The Alibi Room, a bar and grill located at 100 South White Horse Pike, Waterford, New Jersey 08089.

8.      Judith Wisner is a citizen of the State of New Jersey who resides at 405 Tansboro Road, Berlin, New Jersey 08009 and who is the sole member, owner, principal and/or managing member of Dive Bar Diva, LLC.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as there is complete diversity of citizenship between Colony (a Virginia corporation with a Virginia principal place of business) and Aspen (a North Dakota corporations with a Connecticut principal places of business) and Dive Bar Diva, LLC (a limited liability company formed under New Jersey law whose sole/managing member is a New Jersey citizen), and the matter in controversy exceeds the sum or value of $75,000 (the dispute in available Aspen limits amounts to approximately ($700,000), exclusive of interest and costs.

10.      This Court has personal jurisdiction over Aspen and Dive Bar Diva, LLC because, at all relevant times, they transact business in this judicial district.

11.      Venue is proper in this judicial district under 28 U.S.C. § 1391(a)(3) because a substantial part of the events or omissions giving rise to this dispute occurred in this district in that the alleged accident and injuries that are the subject of the related Underlying Action out of which this insurance coverage dispute arises occurred within this district.

12.      In this action, Colony seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. An actual controversy exists between Colony as an excess insurer and Aspen as a primary insurer concerning, among other things, the scope of Aspen's obligation and duty under the Aspen primary policy at issue to defend and potentially indemnify DBD in connection with the claims asserted against DBD in the Underlying Action.

## THE UNDERLYING LAWSUIT

13.      As stated above, this insurance dispute arises out of an underlying wrongful death and survival action styled *Iannaco v. Dive Bar Diva, LLC, et al*., Index No. CAM-L-566-18 which is pending in the New Jersey Superior Court, Camden, New Jersey and currently scheduled for

trial on August 24, 2020. A copy of the Amended Complaint filed in the Underlying Action on October 17, 2019 is attached hereto as Exhibit A.

14.     In the Underlying Action, plaintiff Christine Iannaco, individually and as the administrator of the estate of Edward R. Iannaco, alleges that on or about February 19, 2016 and into the early morning hours of February 20, 2016, Edward Iannaco, plaintiff's husband, was a patron of the Alibi Room Bar where he was served alcoholic beverages. *See* Ex. A at ¶¶ 13, 14.

15.     According to the amended complaint, Mr. Iannaco was visibly intoxicated during the time that he was a patron of the Alibi Room on February 19, 2016 . *Id*. at ¶ 15.

16.     Plaintiff further alleges that Edward Iannaco left the Alibi Room between 12:00 a.m. and 1:00 a.m. in a "highly intoxicated and cognitively impaired state" as a consequence of having been served alcoholic beverages there while he was visibly intoxicated. *Id*. at ¶¶ 16, 15.

17.     The amended complaint alleges that, within minutes of leaving the Alibi Room, Mr. Iannaco crashed the vehicle he was driving and died, but not before experiencing "severe physical, mental and emotional pain and suffering" before expiring. *Id*. at  ¶¶ 19, 21.

18.     According to plaintiff, the Camden County Medical Examiner's Office determined that Mr. Iannaco's blood alcohol concentration was 0.278 at the time of the accident. *Id*. at ¶ 22.

19.     The amended complaint further avers, in pertinent part, that Mr. Iannaco's death was the result of various purportedly negligent, careless, reckless and intentional acts or omissions by DBD (and various other defendants) in serving alcoholic beverages to Iannaco while he was "visibly intoxicated," alleges a cause of action for negligence as well as causes of action under the New Jersey Wrongful Death Act, N.J.S.A. §2A:31-1, and the New Jersey Survival Act, N.J.S.A. §2A:15-3, and seeks punitive damages. *Id*. at ¶¶ 44-73; 80-83.

**THE RELEVANT INSURANCE POLICIES**

*A.   The Aspen Primary Policy*

20.     Aspen issued a primary policy of insurance to "Hospitality Supportive Systems (HSS C)" ("HHS") – bearing policy number CR003UL15 ("the Aspen Policy") – with an effective policy period from June 13, 2015, to December 13, 2016. *See* Copy of Aspen Policy attached hereto as Ex. B.

21.     Upon information and belief, HSS is an insurance purchasing group which solicits business owners and operators within the hospitality and restaurant industry to enter into a property and liability insurance sharing program under which individual restaurant, tavern and bar owners who elect to participate in the program – including DBD – are added as insureds to the insurance policies procured by HHS.

22.     The Aspen Policy provides both commercial general liability coverage and liquor liability coverage, subject to the terms, conditions, exclusions and limitations set forth in the policy. *See* Ex. B, Commercial General Liability Declarations and Liquor Liability Declarations.

23.     According to the policy's Declarations, the Aspen Policy has general liability limits of $1 Million each occurrence and a $2 Million general aggregate limit. *See* Ex. B, Commercial General Liability Declarations.

24.     The insuring agreement applicable to the Aspen Policy's general liability coverage part provides, in relevant part, as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as

5

damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amounts we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

\*\*\*

25. In addition, the Aspen Policy contains various exclusions applicable to the policy's commercial general liability coverage, including the following:

**2. Exclusions**

\*\*\*

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

26.     With respect to the Aspen Policy's liquor liability coverage, the declarations state that the policy's liquor liability coverage is subject to a $1million "each common cause limit" and a $1 Million "aggregate limit." *See* Ex. B, Liquor Liability Declarations.

27.     The insuring agreement applicable to that coverage part provides, in pertinent part, as follows:

**LIQUOR LIABILITY COVERAGE FORM**

**SECTION I – LIQUOR LIABILITY COVERAGE**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:

> **(1)**  The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

> **(2)**  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

***

28.     Significantly, the Aspen Policy contains the following "Liquor Liability Extension Endorsement" that restores the liquor liability coverage under the policy's Commercial General Liability Coverage Part that was previously precluded by Exclusion 2(c), and amends the limits for claims falling within the policy's liquor hazard so that the applicable $1 Million limit applies on an "Each Location" basis:

7

## LIQUOR LIABILITY EXTENSION ENDORSEMENT

This Endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

In consideration of the premium charged, it is agreed that:

**A.  SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Paragraph 2., Exclusions, Subparagraph c. shall not apply to the extent of the coverage provided by this Endorsement.

\*\*\*

**D.  SECTION III – LIMITS OF INSURANCE** is amended to include the following:

Additional Paragraph 1.

The Liquor General Aggregate Limit set forth in the Schedule of this Endorsement is the most we will pay under this policy for all damages because of all "bodily injury" and "property damage" included within the "liquor hazard" that is sustained by one or more persons or organizations.

Additional Paragraph 2.

Subject to Additional Paragraph 1. above, the Liquor Each Location Aggregate Limit set forth in the Schedule of this Endorsement is the most we will pay under this policy for all damages because of "bodily injury" and "property damage" included within the "liquor hazard" that is sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage(s) at a location to which this insurance applies.

Additional Paragraph 3.

Subject to Additional Paragraph 1. & 2. above, the Liquor Each Location Occurrence Limit set forth in the Schedule of this Endorsement is the most we will pay under this policy for damages because of "bodily injury" and "property damage" included within the "liquor hazard" at each location to which this insurance applies, that is sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage(s) to any one person.

**E.**  Solely for the purposes of this Endorsement, SECTION V – DEFINITIONS is amended to include the following definition:

"Liquor hazard" means all "bodily injury" and "property damage" arising out of the selling, servicing or furnishing of any alcoholic beverage(s).

SCHEDULE

| | |
|---|---|
| LIQUOR EACH LOCATION OCCURRENCE LIMIT: | $1,000,000 |
| LIQUOR EACH LOCATION AGGREGATE LIMIT: | $1,000,000 |
| LIQUOR GENERAL AGGREGATE LIMIT | $1,000,000 |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*See* Ex. B, "Liquor Liability Extension Endorsement" (Form ASPGL428 0515).

29.     The Aspen Policy also contains a "Designated Location(s) General Aggregate Limit" endorsement that modifies the insurance provided under the policy's commercial general liability coverage part and which states, in pertinent part, as follows:

A.     Limits of Insurance in the General Liability Declarations are amended to include the following Limit:

Combined Total Aggregate Limit Cap: $10,000,000

***

*See* Ex. B, "Designated Location(s) General Aggregate Limit (Form ASPGL429 0515).

**B.   *The Colony Excess Liability Policy***

30.     Colony issued an excess liability insurance policy to "Hospitality Supportive Systems, LLC 'C'" – bearing policy number AR4460498 ("the Colony Policy") – with an effective policy period from June 13, 2015, to December 13, 2016. *See* Copy of Colony Policy attached hereto as Ex. C.

31.     The Colony Policy has limits of $2 Million each occurrence and in the aggregate, and provides excess liability coverage in the layer above the primary coverage afforded by the Aspen Policy, subject to the terms, conditions, exclusions and limitations set forth in the Colony

Policy <u>and</u> the proper exhaustion of the limits of the underlying Aspen Policy. *See* Ex. C, Excess

Liability Declarations; Schedule A - Schedule of Underlying Insurance.

32.     The Colony Policy contains the following insuring agreement applicable to the

policy's excess liability coverage:

**Section I – Coverage**

   **1.  Insuring Agreement**

      **a.**  We will pay those sums that the insured becomes obligated to pay as damages in excess of the applicable limits of "underlying insurance", shown in the Declarations to which this insurance applies.  The terms and conditions of insurance of this policy are the same as those of the "underlying insurance" in effect at the inception of this policy except as specifically set forth in this policy and any endorsements attached hereto. This policy provides excess liability over "underlying insurance" in full force and effect during the "policy period" of this policy. However:
        **(1)** The amount we will pay for damages is limited as described in Section II – **Limits of Insurance**.

        **(2)** We shall have the right and duty to defend claims against the insured when the applicable Limit of Insurance of the "underlying insurance" is exhausted.  This right and duty end when we have used up the applicable Limit of Insurance of this policy.  We have no duty to defend the insured against any claim to which this insurance or that of the "underlying insurance" does not apply.  We do, however, have the right to participate in the investigation, settlement or defense of a claim covered by "underlying insurance" which we believe may result in liability on our part.

      **b.**  Only payment of those damages covered by "underlying insurance" during the term of this policy shall be considered in determining the extent of any exhaustion of the Limits of Liability of any "underlying insurance".

***

*See* Ex. C, Insuring Agreement (Form XP0002-0607)

33.     In addition, the Colony Policy contains the following endorsement relating to

"insured members" that amends the insuring agreement as follows:

   **A. Section I – Coverage, 1. Insuring Agreement** is amended and the following added:

10

Any "insured member" issued a Certificate of Insurance under this Master Policy will qualify as a Named Insured if there is no other similar insurance available to that organization. However, this insurance does not apply to "injury or damage" prior to the inception date shown in the "certificate policy period."

\*\*\*

*See* Ex. C, "Separation of Insured – Insured Members" Endorsement (Form T4259-0615).

34.     The Colony Policy defines "insured member" to mean:

**a.** an individual restaurant named insured entity member of the First Named Insured shown in the Declarations and named on a Certificate of Insurance issued evidencing the "insured member's" coverage under the Master Policy; and

**b.** endorsed to the Schedule of Designated Locations on this Master Policy.

\*\*\*

*Id*.

35.     The Colony Policy also contains the following exclusion:

**2.  Exclusions**

This insurance does not apply to:

\*\*\*

**e.** Any claim for damages that is covered under a sublimit of any "underlying insurance" or would have been covered but for the exhaustion of the sub-limit of liability of the "underlying insurance".

\*\*\*

*See* Ex. C, Exclusion No. 2(e).

36.     The Colony Policy also contains the following "Maintenance of underlying insurance" condition that provides, in pertinent part, as follows:

**Section III – Conditions**

**2.  Maintenance of "underlying insurance"**

11

**a.** You agree to maintain the "underlying insurance" in full force and effect during the term of this policy.

**b.** For purposes of this policy, if any "underlying insurance" is not available or collectible because of:

**(1)** the bankruptcy or insolvency of the underlying insurer providing such "underlying insurance",

**(2)** the inability or failure for any other reason of such underlying insurer to comply with any of the obligations of its policy, or

**(3)** the rescission, wholly or in part, of policies shown in the schedule of "underlying insurance"

then the insured shall be deemed to be self-insured and how this policy shall apply and amounts payable hereunder shall be determined as if such "underlying insurance" is available and collectible.

**c.** Policies replaced renewed or reissued shall not provide coverage that is broader or Limits of Insurance that are less than that provided in the policies listed in the Schedule of Underlying Insurance.

**d.** To the extent that the "underlying insurance" is rescinded wholly or in part this policy shall be deemed rescinded.

*** 

*See* Ex. C, Condition No. 2.

37.     The Colony Policy also contains the following endorsement relating to the limits

of insurance potentially available under the policy which provides, in part:

It is hereby understood and agreed that **Section II – Limits of Insurance** is deleted and replaced with the following:

**Section II – Limits of Insurance**

***

**2.** The Aggregate Limit is the most we will pay:

**a.** For all damages for each type of coverage which is subject to an aggregate in the "underlying insurance";

**b.** Subject to **2.a.** above, for each occurrence or offense with regard to all damages for all

12

coverages to which this policy applies; and

   **c.** For any payments or expenses to which this insurance applies.

***

  **4.** Subject to **2.** above:

   **b.** Any exhaustion of any sub-limit of liability of any "underlying insurance" shall not be deemed to exhaust the "underlying insurance";

   **c.** Any exhaustion of any limit of liability of any "underlying insurance" for any coverage, term or condition excluded by this policy shall not be deemed to exhaust the "underlying insurance".

***

*See* Ex. C, "Single Aggregate Limit Endorsement – Per Policy period (Form XP124-0806).

### <u>ASPEN SENDS "NOTICE OF PENDING EXHAUSTION" LETTERS TO COLONY AND DBD GROSSLY UNDERSTATING THE REMAINING LIMITS</u>

38.    By letter dated August 29, 2019, Aspen wrote to Colony and advised that "Aspen has been defending Dive Bar Diva LLC t/a Alibi Room, subject to a reservation of rights in connections with the lawsuit captioned <u>Iannaco v. Dive Bar Diva, LLC, et al</u>., pending in the Superior Court of New Jersey, Camden County, Index No. CAM-L-566-18." *See* copy of 8/28/19 Letter from Jack P. Marlin, Aspen Sr. Technical Claims Adjuster, to Colony attached hereto as Ex. D.

39.    In its letter, Aspen also advised that the Aspen Policy has "liquor liability limits of $1 million per common clause and $1 million general aggregate," and, further, that "the $1 million liquor liability aggregate limit of the Aspen Policy is nearing exhaustion in connection with various liquor liability claims throughout the HSS Program." *Id*.

40.    In its correspondence to Colony, Aspen did not reference, cite or acknowledge the "Liquor Liability Extension Endorsement" in the Aspen Policy or the language contained therein

13

that provides, in pertinent part, that " … the [$1 Million] Liquor Each Location Limit set forth in the Schedule of this Endorsement is the most we will pay under this policy for damages because of 'bodily injury' and 'property damage' included within the 'liquor hazard' ***at each location*** to which this insurance applies, that is sustained by one or more persons or organizations as the result of selling, serving or furnishing of any alcoholic beverage(s) to any one person." *See* Ex. B, "Liquor Liability Extension Endorsement" (Form ASPGL428 0515) (emphasis added).

41.     Rather, Aspen's letter states only that "Aspen is currently handling several active claims and suits and has been providing a defense to those additional insureds that may be subject to legal liability in connections with those claims" and "[a]s a result of indemnity payments made, the remaining liquor liability aggregate is $310,000." *See* Ex. D.

42.     Consistent with Aspen's view that the Aspen Policy's liquor liability limit applies to ***all*** covered liquor liability claims in the aggregate and not on an "each location" basis, the letter concludes that "[i]n addition to the Underlying Action, there are *other* pending liquor liability claims that may resolve and further reduce those remaining limits." *Id*.

43.     Less than one week later, by letter dated September 5, 2019, Aspen directed correspondence to HSS and the Alibi Room which is substantially similar to the letter Aspen sent Colony advising that "the $1 million liquor liability aggregate limit of the Aspen Policy is nearing exhaustion" and that "the remaining liquor liability aggregate limit is $310,000." *See* copy of 9/5/19 Letter from Jack P. Marlin, Aspen Sr. Technical Claims Adjuster, to HSS and Judith Wisner attached hereto as Ex. E.

44.     Unlike the letter Aspen sent to Colony, however, the 9/5/19 letter to HSS and the Alibi Room quotes the language in the Aspen Policy's Liquor Liability Extension Endorsement in full – including the language in the Schedule providing "LIQUOR EACH LOCATION

AGGREGATE LIMIT:  $1,000,000" – but fails to discuss why Aspen believes that the $1 million *each location* aggregate limit does not apply to the claims asserted against DBD in the Underlying Action based on DBD's alleged negligence in connection with the furnishing of alcoholic beverages to Mr. Iannaco at the Alibi Room location in Waterford, New Jersey.

45.     By letter dated November 11, 2019, Colony sought a clarification from Aspen of its position concerning the available limits remaining under the Aspen with which to satisfy any judgment or settlement that might be entered in favor of the plaintiffs in the Underlying Action. *See* copy of 11/11/19 Letter from William F. Stewart, Esq. to William D. Deveau, Esq. attached hereto as Ex. F.

46.     In its correspondence to Aspen, Colony advised that based upon its review of the Aspen Policy, it seems clear that, among other things, the "Liquor Liability Extension Endorsement" added to the Aspen Policy restored liquor liability coverage to the policy's commercial general liability coverage part, and that the $1 million limit applicable to that coverage applies to "each location." *Id*.

47.     One week later, by letter dated November 18, 2019, Aspen responded by taking the position that all of the claims falling within the Aspen's Policy's liquor liability hazard are subject to a "general aggregate sub-limit." *See* copy of 11/18/19 Letter from William D. Deveau, Esq. to William F. Stewart, Esq. attached hereto as Ex. G.

48.     According to Aspen, "the [Aspen] Policy clearly and repeatedly states that all claims arising out of the 'selling, servicing or furnishing of any alcoholic beverage' are subject to a $1 million general aggregate sub-limit" and that "[t]his $1 million general aggregate sub-limit of liability is plainly set forth in the 'Liquor Liability Declarations' as well as the "Liquor Liability Extension Endorsement' contained in the Policy."  *Id*.

49.     Aspen's letter further expresses the opinion that "the coverage available under the Aspen Policy appears to be insufficient to fully cover the Underlying Action." *Id*.

## COUNT I – Declaratory Judgment

### *The Aspen Policy's $1 Million "Each Location" Liquor Liability Limit Applies to the Claims Asserted Against DBD in the Underlying Action*

50.     Colony incorporates the allegations contained in paragraphs 1 through 49 as though fully set forth herein.

51.     The claims asserted against DBD in the Underlying Action arise out of its alleged "selling, servicing or furnishing" of alcoholic beverages to Mr. Iannaco while he was "visibly intoxicated" on the evening he died. *See* Ex. A at ¶¶ 13-15; 18, 20.

52.      The "Liquor Liability Extension Endorsement" in the Aspen Policy amends the policy by eliminating Exclusion 2 (c) for "Liquor Liability"  from the coverage provided under the policy's Commercial General Liability Coverage Part. *See* Ex. B, "Liquor Liability Extension Endorsement" (Form ASPGL428 0515).

53.     In that regard, the "Liquor Liability Extension Endorsement" in the Aspen Policy restores coverage under the Commercial General Liability Coverage Part for "damages because of 'bodily injury' … included within the 'liquor hazard' at each location to which this insurance applies, that is sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage(s) to any one person." *Id*.

54.     The endorsement defines "liquor hazard" to mean "all 'bodily injury' and 'property damage' arising out of the selling, servicing or furnishing of any alcoholic beverage(s)." Id.

55.     In addition,  the "Liquor Liability Extension Endorsement" amends the Limits of Insurance applicable to claims for damages because of "bodily injury" within the "liquor hazard" under the Commercial General Liability Coverage Part.

16

56.    In particular, the endorsement provides that "the Liquor Each Location Aggregate Limit set forth in the Schedule of this Endorsement [i.e., $1 Million] is the most we will pay under this policy for all damages because of 'bodily injury' … included within the 'liquor hazard' that is sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage(s) at a location to which this insurance applies." *Id*., Section D

57.    The endorsement further provides that "the Liquor Each Location Occurrence Limit set forth in the Schedule of this Endorsement [i.e., $1 Million] is the most we will pay under this policy for all damages because of 'bodily injury' … included within the 'liquor hazard' at each location to which this insurance applies that is sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage(s) to any one person." *Id*.

58.    In the Underlying Action, plaintiff asserts claims against DBD and seeks damages because of alleged "bodily injury" included with the Aspen Policy's "liquor hazard," and The Alibi Room bar and grill in Waterford, New Jersey is a "location" to which the insurance available under the Aspen Policy applies.

59.    As such, the liquor liability claims asserted against DBD in the Underlying Action are subject to a $1 Million limit under the Aspen Policy that applies on an "Each Location" basis and, therefore, to The Alibi Room location individually.

WHEREFORE, Colony Insurance Company respectfully requests this Court to enter an order declaring that the liquor liability claims asserted against Dive Bar Diva, LLC t/a The Alibi Room in the Underlying Action are subject to a $1 Million limit under the Aspen Policy, and

awarding such other costs, disbursements, fees, and such other relief as this Court deems just and appropriate.

## COUNT II – Declaratory Judgment

### *Colony Has No Obligation to Provide Excess Coverage for the Claims Asserted in the Underlying Action Before the $1 Million Limits Afforded by the Underlying Aspen Policy Applicable to these Claims Has Been Exhausted*

60. Colony incorporates the allegations contained in paragraphs 1 through 59 as though fully set forth herein.

61. The Colony Policy provides excess liability coverage subject to the same terms and conditions in the Aspen Policy, except as specifically set forth in the Colony Policy. *See* Ex. C, Insuring Agreement (Form XP0002-0607).

62. The excess liability coverage potentially available under the Colony Policy is excess of the applicable limits of the "underlying insurance" afforded under the Aspen Policy. *Id.*

63. The Colony Policy's "Schedule of Underlying Insurance" identifies the Aspen Policy as primary, underlying insurance. *Id.*, Schedule A – Schedule of Underlying Insurance.

64. The Colony Policy further provides that "[o]nly payment of those damages covered by 'underlying insurance' during the term of this policy shall be considered in determining the extent of any exhaustion of the Limits of Liability of any 'underlying insurance.'" *Id.*

65. As demonstrated above, the applicable limits of "underlying insurance" available under the Aspen Policy for the claims asserted against DBD in the Underlying Action is $1 Million.

66. Accordingly, the excess liability coverage potentially available under the Colony Policy may be accessed, if at all, only after the Aspen Policy has paid $1 Million for damages covered under the Aspen Policy in connection with the claims asserted against DBD in the Underlying Action.

WHEREFORE, Colony Insurance Company respectfully requests this Court to enter an order declaring that Colony has no obligation to provide excess liability coverage, if at all, for the claims asserted against Dive Bar Diva, LLC t/a The Alibi Room in the Underlying Action unless and until the $1 Million limit available under the Aspen Policy for covered damages in connection with the claims asserted against DBD in the Underlying Action has been paid, and awarding such other costs, disbursements, fees, and such other relief as this Court deems just and appropriate.

### COUNT III – Declaratory Judgment

***If the Claims Asserted against DBD in the Underlying Action Are Deemed Subject to a General Aggregate Sub-Limit of Liability under the Aspen Policy Applicable to Claims Within the Policy's Liquor Liability Hazard, Excess Coverage for Such Claims Is Expressly Barred***

67.     Colony incorporates the allegations contained in paragraphs 1 through 66 as though fully set forth herein.

68.     Aspen is defending DBD against the claims asserted in the Underlying Action subject to a reservation of its rights under the Aspen Policy. *See* Ex. D.

69.     In addition, Aspen has taken the position that all of the claims falling within the Aspen's Policy's liquor liability hazard – including the claims asserted against DBD in the Underlying Action which Aspen is currently defending – are subject to a "general aggregate sub-limit of liability" such that the policy's $1 Million limit applicable to liquor liability claims applies not on an "Each Location" basis as stated in the policy's Liquor Liability Extension Endorsement, but rather, on an aggregate basis for all such claims. *See* Ex. G.

70.     The Colony Policy contains an exclusion that states:

This insurance does not apply to:

*** 

**e.**  Any claim for damages that is covered under a sublimit of any "underlying insurance"

or would have been covered but for the exhaustion of the sub-limit of liability of the "underlying insurance".

***

*See* Ex. C, Exclusion No. 2(e).

71.     Colony disagrees with Aspen's position that the Aspen Policy is subject to a $1 Million general aggregate sub-limit of liability for claims within the liquor hazard covered under the policy's Commercial General Liability and Liquor Liability Coverage Parts.

72.     To the extent that it may be determined, however, that the Aspen Policy is indeed subject to a $1 Million general aggregate sub-limit of liability for claims within the liquor hazard covered under the policy's Commercial General Liability and Liquor Liability Coverage Parts, excess coverage for the claims alleged in the Underlying Action is expressly barred by Exclusion 2 (c) in the Colony policy for "[a]ny claim for damages that is covered under a sublimit of any 'underlying insurance' or would have been covered but for the exhaustion of the sub-limit of liability of the 'underlying insurance'."

WHEREFORE, Colony Insurance Company respectfully requests this Court to enter an order declaring that, to the extent that it may be determined that the Aspen Policy is subject to a $1 Million sub-limit of liability applicable to claims within the liquor hazard covered under the policy's Commercial General Liability and Liquor Liability Coverage Parts including the claims alleged against Dive Bar Diva, LLC t/a The Alibi Room in the Underlying Action, excess coverage for these claims is expressly barred by Exclusion 2 (c) in the Colony Policy, and awarding such other costs, disbursements, fees, and such other relief as this Court deems just and appropriate.

**JURY DEMAND**

Colony demands a trial by jury on all issues so triable.


Dated:  July 27, 2020                    Respectfully submitted,

                                         **STEWART SMITH**

                                         *s/ William F. Stewart*
                                         William F. Stewart, Esq.
                                         300 Four Falls Corporate Center, Suite 670
                                         300 Conshohocken State Road
                                         West Conshohocken, PA 19428
                                         Tel:  (484) 344-5296
                                         Fax: (484) 534-9470
                                         Email: wstewart@stewartsmithlaw.com

                                         ***Attorneys for Plaintiff***
                                         ***Colony Insurance Company***