IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COLONY INSURANCE COMPANY<br><br>*Plaintiff*,<br><br>v.<br><br>ASPEN SPECIALTY INSURANCE COMPANY, DIVE BAR DIVA, LLC t/a THE ALIBI ROOM<br><br>*Defendants*. | Civil Action No. 20-cv-09446-JHR-JS<br><br>**Opinion** |

Before the Court is Defendant Aspen Specialty Insurance Company's ("Aspen") Motion to Dismiss Plaintiff Colony Insurance Company's ("Colony") Complaint for lack of standing and failure to join a necessary party [Dkt. 6] and Colony's response thereto. [Dkt. 11]. Having considered the arguments presented in the parties' briefing and during the April 21, 2021 oral arguments, and for the reasons discussed below, the Court denies Aspen's Motion to Dismiss, but will grant Colony leave to amend its Complaint to join Hospitality Supportive Systems ("HSS") as a necessary party.

**I. Background**

Colony is an insurance company organized in Virginia with a principal place of business in Richmond, Virginia. [Dkt. 1, Compl. ¶ 5]. Aspen is an insurance company organized in North Dakota with a principal place of business in Rocky Hill, Connecticut. [*Id.* ¶ 6]. Colony and Aspen both issued insurance policies to HSS, an insurance purchasing group that administers a shared-risk insurance program for hospitality and restaurant industry businesses (the "Shared Risk Program"). [Dkt. 1, Compl. ¶ 21]. Approximately 205 businesses subscribe to and receive

1

insurance coverage through the Shared Risk Program. [Dkt. 6 at 7]. Aspen contracted with HSS to provide the primary insurance policy for the Shared Risk Program from June 13, 2015 to December 13, 2016 (the "Aspen Policy"), and Colony contracted with HSS to provide a second, overflow insurance policy for the same time period (the "Colony Policy"). Each policy requires the respective insurer to defend and indemnify Shared Risk Program participants in litigation concerning certain covered events. [Compl. ¶¶ 24, 27, 32]. The Colony Policy states that Colony's coverage obligations would kick in after "proper exhaustion of the limits of the underlying Aspen Policy." [Compl. ¶ 31]. As discussed below, the parties disagree as to when HSS and its subscribers exhaust the Aspen Policy's coverage.

One Shared Risk Program participant was Defendant Dive Bar Diva ("DBD") which owns and operates The Alibi Room, a bar located on the White Horse Pike in Waterford, New Jersey. [Compl ¶ 7]. Since October 17, 2019, DBD has been defending itself in a wrongful death and survival action styled *Iannaco v. Dive Bar Diva, LLC, et al.*, Index No. CAM-L-566-18 in the New Jersey Superior Court (the "DBD Litigation"). [Compl. ¶ 13]. Christine Iannaco, the plaintiff in the DBD Litigation ("DBD Plaintiff"), is the surviving wife of a deceased Alibi Room patron. The DBD Plaintiff alleges that, on February 19, 2016, Alibi Room staff served her husband past the point of intoxication, and that DBD's conduct caused him to crash his car in a fatal accident after leaving the Alibi Room. [Compl. ¶¶ 14–19].

Pursuant to the Aspen Policy, Aspen has funded DBD's defense in the DBD Litigation, among other claims against Shared Risk Program participants. [*See* Compl. ¶¶ 38–39]. In a letter to Colony dated August 29, 2019 (the "August 29 Letter"), Aspen stated the following:

> Please be advised that the $1 million liquor liability aggregate limit of the Aspen Policy is nearing exhaustion in connection with various liquor liability claims throughout the HSS Program. Aspen is notifying HSS, Colony Insurance Company and multiple

> additional named insureds about the pending exhaustion and remaining limits….
>
> Aspen is currently handling several active claims and suits and has been providing a defense to those additional named insureds that may be subject to legal liability in connection with those claims. As a result of indemnity payments made, the remaining liquor liability aggregate is $310,000. In addition to the [DBD Litigation], there are other pending liquor liability claims that may resolve and further reduce those remaining limits.
>
> **NOTICE OF PENDING EXHAUSTION AND EXCESS LIABILITY**
>
> Aspen's duty to defend or indemnify any insured or settle any liquor liability claim or suit that would otherwise be covered under the Aspen Policy will cease upon exhaustion of the applicable aggregate limit of the Aspen Policy. It is highly possible that the insureds' legal liability may exceed those remaining limits. Additionally, there are other pending liquor liability claims that may resolve and further reduce those remaining limits. Aspen will continue to defend its insureds until the applicable aggregate limit is completely exhausted. However, further handling of the [DBD Litigation] and other pending liquor liability claims should be coordinated with HSS and the additional named insureds now.

[Dkt. 4, Compl. Exh. D]. Central to this matter is Aspen's position that it must insure the first $1,000,000 in aggregate liquor liability claims for all 205 Shared Risk Program participants under the Aspen Policy and that only $310,000 in aggregate coverage funds remained as of August 29, 2019.

On November 11, 2019, Colony sent a letter advising Aspen that it disagreed with Aspen's interpretation of the Aspen Policy. According to Colony, Aspen must insure "each location" for the first $1,000,000 in liquor liability claims and must provide $10,000,000 in aggregate liquor liability coverage. [Dkt. 4, Compl. Exh. F]. In Colony's view, "the remaining limits are significantly higher than stated in Aspen's letters of pending exhaustion to Colony." [*Id.*]. Colony indicated that "[t]o the extent that Aspen is unwilling to [reconsider its coverage

3

position], it appears that the insured may well have an uninsured gap and will have to be notified." [*Id.*].

Aspen repeated its position in a November 18, 2019 response letter to Colony and indicated that "the coverage available under the Aspen Policy appears to be insufficient to fully cover the [DBD Litigation]." [Dkt. 4, Compl. Exh. G].

Colony filed this lawsuit seeking a declaration that Aspen must insure Shared Risk Program participants up to $1,000,000 for "each location," and that this $1,000,000 limit applies to the DBD litigation. [Count I, Compl. ¶¶ 50–59]. Similarly, Colony seeks a declaration that it need not provide any coverage in the DBD Litigation until Aspen's $1,000,000 per-location coverage has been exhausted. [Count II, Compl. ¶¶ 60–66]. Finally, Colony seeks a declaration that, even if Aspen's interpretation of the Aspen Policy is correct, exclusions in the Colony Policy relieve Colony from insuring the DBD Litigation altogether. [Count III, Compl. ¶¶ 67–72].

Aspen filed the present Motion to Dismiss, seeking dismissal of Colony's Complaint on two grounds. First, Aspen argues that the Court lacks subject matter jurisdiction over Colony's Complaint because Colony's requests for declaratory judgment are not ripe for adjudication. [Dkt. 6]. Second, Aspen argues that failed to join HSS and the DBD Plaintiff as indispensable parties. [*Id.*].

## II. Ripeness

### a. Standard of Review

"Rule 12(b)(1) of the Federal Rules of Civil Procedure permits the dismissal of an action for 'lack of subject matter jurisdiction.'" *Sauer v. Subaru of Am., Inc.*, No. CV 18-14933, 2020 WL 1527779, at *2 (D.N.J. Mar. 31, 2020) (quoting Fed. R. Civ. P. 12(b)(1)). "Because lack of

4

ripeness impedes justiciability and thus the subject matter jurisdiction of the district court, ripeness claims should be raised in a Rule 12(b)(1) motion to dismiss….." *Knute Enterprises, Inc. v. Dupont Borough*, No. CIV.A. 3:06-CV-01978, 2007 WL 2844952, at *2 (M.D. Pa. Sept. 26, 2007) (citing *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1290 (3d Cir. 1993)). "A Rule 12(b)(1) motion may be treated as either a facial challenge to the sufficiency of the pleadings, or factual challenge to sufficiency of jurisdictional facts." *Sauer*, 2020 WL 1527779, at *2 (citing *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)). When reviewing a facial challenge, courts "accept the Plaintiffs' well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the Plaintiffs' favor." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). "When reviewing a factual attack … the court may weigh and consider evidence outside the pleadings." *Sauer*, 2020 WL 1527779, at *2 (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

Aspen's brief is somewhat ambiguous as to whether Aspen raises a facial or factual challenge to the ripeness of Colony's declarative judgment action. Aspen's 12(b)(1) arguments focus on Colony's Complaint and the exhibits attached thereto[1] without "'present[ing] competing facts'" or additional evidence.[2] *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). Thus, the Court construes Aspen's motion as a facial challenge to ripeness, and will draw all reasonable

---

[1] Courts are permitted to consider exhibits attached to a complaint when deciding a motion to dismiss. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[2] Aspen attached to a its motion a copy the complaint it filed against HSS and other parties in a separate action in the Eastern District of Pennsylvania. [*See* Dkt. 6-2, Exh. A]. Aspen only refers to this exhibit for background, and does not rely on it to support its ripeness arguments.

inferences in favor of Colony.  *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d at 633.

### b. Analysis

Ripeness, like the standing doctrine, "is a component of the Constitution's limitation of the judicial power to real cases and controversies." *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994) (citing *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 411 & nn.12–13 (3d Cir. 1992).  "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, … and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Peachlum v. City of York, Pennsylvania*, 333 F.3d 429, 433 (3d Cir. 2003) (citations omitted).  "Accordingly, the ripeness doctrine requires that the challenge grow out of a 'real, substantial controversy between parties involving a 'dispute definite and concrete.'" *Id.* at 434 (citing *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979)).

The ripeness doctrine applies where a plaintiff seeks declaratory relief.  *Florio*, 40 F.3d at 1462.  "To determine whether a declaratory judgment action is ripe, the court must analyze (1) the 'adversity of the interest of the parties,' (2) 'the conclusiveness of the judicial judgment,' and (3) the 'practical help, or utility, of that judgment.'" *AXIS Ins. Co. v. PNC Fin. Servs. Grp., Inc.*, 135 F. Supp. 3d 321, 325 (W.D. Pa. 2015) (citing *Step–Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647–50 (3d Cir. 1990)).  "A defect in one or two of the categories may be sufficient to find that a declaratory judgment claim is not ripe for judicial action." *Id.* (citations omitted).

#### 1. Adversity of Interests

According to the Third Circuit, "[p]arties' interests are adverse where harm will result if the declaratory judgment is not entered." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d

Cir. 1995). A declaratory judgment action "cannot be based on a contingency." *Id.* (citations omitted). At the same time, "the party seeking declaratory relief need not wait until the harm has actually occurred to bring the action." *Id.* (citing *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992). Thus, parties become adverse when there is a "substantial threat of real harm and that [remains] real and immediate throughout the course of the litigation.'" *Persico v. Sebelius*, 919 F. Supp. 2d 622, 637 (W.D. Pa. 2013) (quoting *Florio*, 40 F.3d at 1463). *See also Condenser Serv. & Eng'g Co. v. Am. Mut. Liab. Ins. Co.*, 45 N.J. Super. 31, 38–39, 131 A.2d 409, 413 (App. Div. 1957) (collecting cases where declaratory judgment to determine insurance obligations was appropriate because the carrier's obligation to defend was "relatively certain or imminent"). Parties in insurance coverage disputes may be adverse "much in advance of the judgment [in an underlying lawsuit] since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement." *Selective Ins. Co. of Se. v. Food Mktg. Merch., Inc.*, No. 2:13-CV-193 DMC MF, 2013 WL 2149686, at *4 (D.N.J. May 16, 2013) (quoting *ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 823 (3d Cir. 1981)).

Aspen argues that the parties are not adverse because Colony will not suffer an injury unless and until the DBD Litigation exhausts the Aspen Policy's remaining $310,000. [Dkt. 6-1 at 17–18]. According to Aspen, exhaustion is purely "hypothetical" at this stage of the DBD litigation. [*Id.* at 19]. However, Aspen's own representations belie this argument. In its August 29 Letter to Colony, Aspen stated the following:

> Aspen is notifying HSS, Colony Insurance Company and multiple additional named insureds about the **pending** exhaustion and remaining limits…. Aspen's duty to defend or indemnify any insured or settle any liquor liability claim or suit that would otherwise be covered under the Aspen Policy **will cease upon exhaustion of the applicable aggregate limit of the Aspen**

7

> **Policy**. It is **highly possible** that the insureds' legal liability may exceed those remaining limits. Additionally, there are other pending liquor liability claims that may resolve and further reduce those remaining limits. **Aspen will continue to defend its insureds until the applicable aggregate limit is completely exhausted. However, further handling of the Underlying Action and other pending liquor liability claims should be coordinated with HSS and the additional named insureds now**.

[Dkt. 4, Compl. Exh. D] (emphasis added). In its November 18, 2019 letter to Colony, Aspen indicated that "the coverage available under the Aspen Policy appears to be insufficient to fully cover the Underlying Action." [Dkt. 4, Compl. Exh. G].

These letter excerpts undermine Aspen's ripeness arguments for two reasons. First, Aspen insisted that exhaustion is not merely hypothetical, but instead is "pending" and "highly possible." [*Id.*]. "Pending" and "imminent" are synonymous. *See* Pending, Merriam-Webster, https://www.merriam-webster.com/dictionary/pending (last visited April 9, 2020) ("Imminent, impending"); *see also Condenser Serv. & Eng'g Co.*, 45 N.J. Super. at 38–39, 131 A.2d at 413. Aspen made clear that the remaining $310,000 were "insufficient to fully cover the [DBD Litigation], further emphasizing that exhaustion is imminent. Aspen's August 2019 letter also urges Colony to "coordinate with HSS and the additional named insureds," not at some later date, but "**now**." [*Id.*] (emphasis added). When construed in favor of Colony, this correspondence shows that fund exhaustion is "real and immediate" and not purely hypothetical or conjectural. *Persico*, 919 F. Supp. 2d at 637. That Colony chose to file a lawsuit rather than "coordinate" with HSS does not transform this imminent DBD Litigation funding issue into a mere "contingency."

Second, Aspen's correspondence illustrates a key difference between this case and *Galliano v. Borough of Seaside Heights*, a case upon which Aspen relies throughout its briefing. No. CV 03-1463 (SRC), 2006 WL 8458328, at *1 (D.N.J. May 4, 2006). In *Galliano*, the

8

plaintiff sued the defendants alleging multiple civil rights violations, but also directly sued the defendant's insurance company. No. CV 03-1463 (SRC), 2006 WL 8458328, at *1 (D.N.J. May 4, 2006). The defendants' insurance policy included coverage limits for each "event" or "occurrence." *Id.* The defendants and their insurer maintained that the civil rights violations in the underlying case constituted a single "event." *Id.* Believing that the insurance company's position as to the number of "events" was driving the defendants' strategy and hindering progress in the underlying case, the plaintiff sought declaratory judgment directly against the insurance company on this issue. *Id.* The plaintiff argued that determining the number of "events" would expedite the litigation or settlement. *Id.*

The *Galliano* court found that the plaintiff and the insurance company defendant were not adverse. *Id.* \*4. But in reaching this conclusion, the court relied heavily on the facts that there was "no controversy or dispute as to whether the insurance companies have a duty to indemnify or defend the Municipal Defendants against the claims Plaintiffs allege," and that "substantial insurance coverage is in place." *Id.* \*4.

This case presents a different set of facts. Here, the parties actively dispute their respective duties to defend and indemnify in the DBD Litigation. In its August 29 Letter, Aspen emphasized that its "duty to defend or indemnify … **will cease** upon exhaustion…." [Dkt. 4, Compl. Exh. D] (emphasis added) and that "the coverage available under the Aspen Policy appears to be insufficient to fully cover the Underlying Action." [Dkt. 4, Compl. Exh. G]. Colony responded that its duty to defend and indemnify does not commence when the $310,000 are exhausted. [Dkt. 4, Compl. Exh. F]. Colony also expressed concern that "the insured may well have an uninsured gap and will have to be notified" if both Aspen and Colony refuse to

9

defend or indemnify in the DBD Litigation after the $310,000 are exhausted.[3] [Dkt. 4, Compl. Exh. F]. As Aspen indicated its August 29 Letter, this fund exhaustion is "pending," and it is therefore "highly possible" that the parties' dispute will soon affect the insured. Since claims have already been filed against DBD and other Shared Risk Program participants, Court intervention here "will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement." *Selective Ins. Co. of Se.*, 2013 WL 2149686, at *4 (quoting *ACandS, Inc.*, 666 F.2d at 823). *See also id.* (finding ripeness where insurance company sought declaratory judgment that it would not have to defend or indemnify a policyholder in an underlying lawsuit if the policyholder was later determined in the underlying case to have engaged in knowing trademark infringement). The Court therefore finds that Aspen and Colony are adverse.

### 2. Conclusiveness of the Judgment

"In analyzing [the conclusiveness] factor, the Court must determine whether judicial action at the present time would amount to more than an advisory opinion based upon a hypothetical set of facts." *Florio*, 40 F.3d at 1468. "[P]redominantly legal questions are generally amenable to a conclusive determination in a preenforcement context." *Id.*

The conclusiveness factor also weighs in favor of ripeness. Colony's request for declaratory judgment would require the Court to interpret the Aspen Policy and the Colony Policy. "An insurance policy is a form of contract, … and the interpretation of contract language is a question of law." *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*, 210

---

[3] Aspen also argues that Colony has manufactured this notion of a "coverage gap," and that any gap in coverage is purely hypothetical. [Dkt. 14 at 5]. The Court disagrees. If both parties refuse to fund the DBD litigation after the $310,000 is exhausted—a position that both parties have adopted—then a coverage gap will follow.

10

N.J. 597, 605, 46 A.3d 1272, 1276 (2012) (citations omitted); *see also State National Ins. Co. v. County of Camden*, 10 F. Supp. 3d 568, 574 (D.N.J. 2014) (applying New Jersey contract law to interpret an insurance policy).  Further, "[c]onstruction and interpretation of written instruments (including contracts, insurance policies ... ) is the principle function of a declaratory judgment proceeding." *Travelers Indem. Co. v. Dammann & Co.*, No. CIV. 04-5699 DRD, 2005 WL 3406374, at *3 (D.N.J. Dec. 12, 2005) (quoting *Sun Oil Co. v. Transcontinental Gas Pipeline Corp.*, 108 F. Supp. 280, 282 (E.D. Pa. 1952)).

In this case, interpreting the Aspen and Colony policies will determine which party must defend and indemnify DBD in the DBD Litigation when the $310,000 is exhausted.  As discussed above, this is hardly a "hypothetical state of facts" as Aspen argues [Dkt. 14 at 8], but a situation that is—in Aspen's own words—"pending" and "highly possible."

### 3. Utility

Having determined that adversity exists between Aspen and Colony and that court resolution would be conclusive, the Court has no trouble finding that declaratory judgment would provide "practical help[] or utility" not only to Aspen and Colony, but to the insured. *Step–Saver*, 912 F.2d at 647.

In sum, when construing Colony's Complaint and the exhibits attached thereto in favor of Colony, the Court is satisfied that a "real, substantial controversy" exists between Colony and Aspen that is ripe for adjudication.  *Peachlum*, 333 F.3d at 433 (citations omitted).  Aspen's motion to dismiss Counts I and II of Colony's Complaint for lack of ripeness is therefore denied.

### III. Failure to Join HSS and the DBD Plaintiff

Aspen next argues that Colony's complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(7) for failure to join HSS and the DBD Plaintiff as parties to this action as

11

required by Federal Rule of Civil Procedure 19. For the reasons discussed below, the Court will deny Aspen's motion to dismiss for failure to join, but grant Colony leave to amend its Complaint to join HSS as a necessary party.

Federal Rule of Civil Procedure 12(b)(7) states that "defendants may, in lieu of filing an answer, assert by motion the defense of failure to join a party under Rule 19." *Develcom Funding, LLC v. Am. Atl. Co.*, No. CIV. 09-1839 (RMB), 2009 WL 2923064, at *2 (D.N.J. Sept. 9, 2009). Courts reviewing a 12(b)(7) motion must accept all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. *Id.* (citing *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 Fed. App'x 803, 805 (3d Cir. 2003)). The moving party bears the burden to prove that a non-party is necessary **and** indispensable. *Id.* (citing *Fed. Home Loan Mortgage Corp. v. Commonwealth Land Title Ins. Co.*, No. 92–5255, 1993 WL 95494, at *5 (E.D. Pa. March 31, 1993)) (emphasis added).

"Federal Rule of Civil Procedure 19 specifies the circumstances in which the joinder of a particular party is compulsory." *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). "Rule 19 mandates a two-step process: (1) the court first must determine whether the absent party is 'necessary' under Rule 19(a); and (2) if the party is 'necessary' and joinder is not feasible, then the court must decide whether the party is 'indispensable' under Rule 19(b)." *Tullett Prebon PLC v. BGC Partners, Inc.*, 427 F. App'x 236, 239 (3d Cir. 2011) (citing *Gen. Refractories*, 500 F.3d at 312).

Rule 19(a)(1) provides the standard to evaluate whether an absent party is a "necessary" party at the first step, stating in pertinent part that

> [a] person who is subject to service of process and whose joinder
> will not deprive the court of subject-matter jurisdiction must be
> joined as a party if:

12

>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>>
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). "[T]he subsections of Rule 19(a) are stated in the disjunctive, and thus, if either subsection is satisfied, the absent party is a necessary party that should be joined if feasible." *Abuhouran v. KaiserKane, Inc.*, No. CIV. 10-6609 NLH/KMW, 2012 WL 4027416, at *4 (D.N.J. Sept. 12, 2012) (citing *Gen. Refractories*, 500 F.3d at 312).

Aspen's joinder argument focuses exclusively on Colony's third claim for relief which states:

> [i]f the Claims Asserted against DBD in the Underlying Action Are Deemed Subject to a General Aggregate Sub-Limit of Liability under the Aspen Policy Applicable to Claims Within the Policy's Liquor Liability Hazard, Excess Coverage for Such Claims Is Expressly Barred.

[Compl. ¶ 67]. With respect to HSS, Aspen argues that "[s]ince Colony has taken the position that its excess coverage is barred by operation of an exclusion, and hence completely illusory, [HSS] and/or all other member insureds should be party to this action." [Dkt. 6 at 23]. Similarly, Aspen argues that Colony must join the DBD Plaintiff because Colony's third claim for relief, if successful, could deprive the DBD Plaintiff of settlement or judgment funds. [*Id.* at 24].

As to HSS, the Court agrees with Aspen's characterization of Colony's third claim for relief and finds that HSS is a necessary party under Rule 19(a)(1)(B)(i) due to its interest in this

13

litigation. Colony's third claim for relief seeks to avoid coverage obligations entirely if Colony's interpretation of the Aspen Policy is incorrect and Colony's first two claims for relief fail. [*See* Compl. ¶ 67 ("… Excess Coverage for Such Claims Is Expressly Barred.")]. If successful on the merits, Count III would leave HSS with a gap in coverage when Aspen exhausts its coverage obligations. And, as Aspen observes, HSS negotiated the Aspen and Colony policies, handled "[a]ll underwriting[] and explanation of the HSS Programs," has knowledge of the premiums paid to Aspen and Colony and received from DBD, and may be liable to DBD and other Shared Risk Program participants if Colony succeeds on Count III. [Dkt. 14 at 11–12]. Therefore, HSS has an interest in Colony's Complaint that Colony's third claim for relief may affect.

Colony's arguments to the contrary are unpersuasive. First, Colony suggests that Count III is merely an alternative argument to be considered if Counts I and II fail. [Dkt. 11-1 at 19]. But the Court cannot turn a blind eye to Count III or its consequences simply because Colony has pled it as an alternative theory of relief. Colony also cites *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993) for the proposition that "[a] Rule 19(a)(1) inquiry is limited to whether the district court can grant complete relief to the persons already parties to the action." This argument ignores that subsections (a)(1)(A) and (a)(1)(B) are distinct factors, either of which can render a party necessary to the litigation.[4] *Abuhouran*, 2012 WL 4027416, at *4.

---

[4] Based on the discussion of Rule 19(a) in *Janney*, it appears that the Third Circuit interpreted Rule 19(a)(1) to refer only what the Court has identified as 19(a)(1)(A) above. *See id.* at 404 ("Rule 19(a) … states, in pertinent part: A person ... shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties…."). The *Janney* court also explicitly recognized that "any party whose absence results in any of the problems identified in either subsections (a)(1) or (a)(2) is a party whose joinder is compulsory if feasible." *Id.* at 405. Subsection (a)(2) as cited there mirrors 19(a)(1)(B) cited above. Thus, the *Janney* court did not exclude the 19(a)(1)(B) as a ground for determining that a part is necessary to a case.

This case is also distinguishable from the cases which Colony cites where courts have found that policyholders are not necessary parties in disputes between two insurers. [Dkt. 11-1 at 16–17]. For example, in *Rider Ins. v. Mid-Century Ins. Co.*, there was no risk that declaratory judgment in favor of the moving party would preclude coverage for the insured altogether. No. CV158289MASLHG, 2016 WL 4107690, at *3 (D.N.J. July 29, 2016) ("[E]ven if Mid-Century does not contribute, Rider can cover the maximum amount to which Lawroski is entitled…. Thus, irrespective of whether Mid-Century is required to contribute, Lawroski's interests will be fully protected."). But here, Count III of Colony's Complaint seeks to excuse Colony from coverage obligations entirely, and only if the Court agrees with Aspen's view that $310,000 in coverage remains under the Aspen Policy. For this reason, Aspen's interests depart from HSS's precisely where Count III would come into play. Aspen need only succeed on Counts I and II to avoid paying more than $310,000 in coverage, but Colony's success on Count III could create a coverage gap for HSS. This divergence of interests distinguishes this case from *Federal Insurance Co. v. Singing River Health System*, another case upon which Colony relies. No. 1:15-cv-236, 2015 WL 6454873, *2 (S.D. Miss. Oct. 26, 2015) (defendant was an insured party, and the court declined to find that other insureds were necessary parties because "the interests of Singing River and the absent parties are virtually identical in that all of these parties would presumably advocate a finding of coverage." ). Thus, these cases do not persuade the Court that HSS is not a necessary party.

The DBD Plaintiff, however, does not have a protectible interest in the outcome of this declaratory judgment action, and therefore is not a necessary party. *See State Farm Fire & Cas. Co. v. Vanaman*, No. CIV.A. 10-1565, 2012 WL 959421, at *4 (D.N.J. Mar. 20, 2012) (citing *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 230 (3d Cir. 2005). *See also Hartford*

*Cas. Ins. Co. v. Cardenas*, 292 F.R.D. 235, 241–46 (E.D. Pa. 2013) (applying *Treesdale* to find that plaintiffs in an underlying tort lawsuit do not have a protectible interest in the declaratory judgment action concerning tortfeasor's insurance carrier's coverage obligations).

Since HSS is a necessary party, "joinder must occur if feasible." *Gen. Refractories Co.*, 500 F.3d at 319; Fed. R. Civ. P. 19(a)(1). That HSS must be joined, however, does not by itself require the Court to dismiss Colony's complaint. *See* Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action."). Instead, Aspen must also establish that joining HSS as a necessary party "is not feasible" and that HSS is "indispensable under Rule 19(b)." *Tullett Prebon PLC*, 427 F. App'x at 239. *See also Abuhouran*, 2012 WL 4027416, at *3 ("[D]ismissal under Rule 19 generally requires a three step analysis." (quoting *Bachner Key Number Symbol Co., v. White Rose Food, Inc.*, No. 09–2640, 2010 WL 1049847, at *2 (D.N.J. Mar. 17, 2010))). Joinder is not "feasible" where adding absent parties to the litigation will "defeat subject-matter jurisdiction." *Janney Montgomery Scott, Inc.*, 11 F.3d at 404.

Aspen has not shown that joinder would not be feasible. Aspen has not argued or pointed to any facts to show that joining HSS will defeat diversity of citizenship between Colony and all defendants and thereby deprive the Court of subject matter jurisdiction. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) ("Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant." (citing *Exxon Mobil Corp. v. Allapattah Svcs. Inc.*, 545 U.S. 546, 553, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005))). To the contrary, HSS is organized in Pennsylvania and has its principle place of business in Pennsylvania, [Dkt. 6-2, Exh. A], while Colony is organized in and operates principally out of Virginia. [Compl. ¶ 5]. Because joinder will not destroy diversity jurisdiction, joinder is not futile, and dismissal is unwarranted. *See Abuhouran*, 2012 WL

16

4027416, at *3.

Since joinder is necessary but outright dismissal is unwarranted, the Court will grant Colony leave to amend its Complaint to include HSS as a defendant in this case. *See Bank of New York Mellon as Tr. for Certificateholders of CWALT, Inc., Alternative Loan Tr. 2006-OA6 Mortg. Pass-Through Certificates, Series 2006-OA6 v. Foothills at S. Highlands Homeowners Ass'n*, No. 217CV01918RFBVCF, 2020 WL 1434253, at *2 (D. Nev. Mar. 24, 2020) (noting that the court granted the plaintiff leave to amend its complaint after finding that it failed to join a necessary party).

### IV.  Conclusion

For the reasons discussed above, the Court denies Defendant Aspen's Motion to Dismiss, but will grant Colony leave to amend its Complaint to include HSS as a necessary party. An appropriate order shall follow.


4/22/2021                                                    /s/      Joseph H. Rodriguez

                                                             Hon. Joseph H. Rodriguez, U.S.D.J