UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Colony Insurance Company,<br>vs.<br><br>Aspen Insurance Company; AGLIC Guarantee Specialty & Liability Insurance Company; Hospitality Supportive Systems, LLC; and Dive Bar Diva, LLC t/a The Alibi Room,<br>Defendants. | Civil Action No. 20-cv-09446-JHR-SAK<br><br>**MEMORANDUM OPINION AND ORDER** |

APPEARANCES:

**Robert Drew Fischer, Esq.**
BODELL BOVE LLC
1845 Walnut Street, Suite 1100
Philadelphia, Pa 19103
 Counsel for AGLIC Guarantee Specialty & Liability Insurance Company

**William Douglas Deveau, Esq.**
CONNELL FOLEY LLP
2510 Plaza Five, Harborside Financial Center
Jersey City, NJ 07311
 Counsel for Aspen Insurance Company

This matter comes before the Court on American Guarantee and Liability Insurance Company's ("AGLIC") motion for summary judgment under Federal Rule of Civil Procedure 56 (ECF No. 88). The motion is opposed by defendant Aspen Insurance Company ("Aspen"), the primary insurance provider, who has also moved for judgment on the pleadings under Rule 12(c), or in the alternative, for summary judgment pursuant to Rule 56 (ECF No. 90). For the reasons that follow, AGLIC's motion is **DENIED**, and Aspen's motion is **GRANTED**.

I.   **BACKGROUND**

The Court presumes the parties' familiarity with the factual and procedural record underpinning the Court's prior Opinion dated September 30, 2021 (ECF. No. 62). On February 7,

2023, the Court entered an Order correcting a prior procedural error, whereby it had permitted AGLIC to file a motion for reconsideration past the deadline imposed by our Local Civil Rules (ECF No. 87). The Court did, however, permit AGLIC to file a motion for summary judgment. AGLIC filed its motion March 8, 2023 (ECF No. 88), which was followed by Aspen's motion for judgment on the pleadings or, alternatively, summary judgment (ECF No. 90). Both motions have been fully briefed by the parties (ECF Nos. 92, 93, and 94).

## II.   LEGAL STANDARD

A court may grant summary judgment when the materials of record "show[ ] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir. 1983). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If satisfied, the burden then "shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a *genuine issue for trial.*" *Id.* (internal quotation marks omitted) (emphasis in original). To survive a motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence

that contradict those offered by the moving party. *See Anderson*, 477 U.S. at 256–57. "A non-moving party may not 'rest upon mere allegations, general denials or . . . vague statements[.]'" *Trap Rock Indus., Inc. v. local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). In evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

## III. ANALYSIS

The crux of the parties' motions center around Aspen's coverage limits in its insurance policy previously issued to Hospitality Supportive Systems by Colony, Aspen, and AGLIC. At the threshold, they turn on whether the issue was already decided by the Court's September 2021 Opinion. It was.

### A. AGLIC's Arguments

AGLIC principally asserts that the Court's prior Opinion was incomplete—that it did not analyze the Aspen policy in its entirety, and consequently did not consider the "Liquor Liability Coverage Part" of the policy. AGLIC reasons that the parties' prior briefings focused exclusively on the coverage available under the CGL Coverage Part and therefore the Court did not address the scope of coverage "under the **separate** Liquor Liability Coverage Part." (ECF. No. 88-3 at 7). AGLIC grounds its argument on what it contends is the absence of any reference to or construction of the term "Each Common Cause Limit" in the Liquor Liability Coverage Part. (*Id.*) In essence, AGLIC contends that the Court could not have addressed Aspen's liquor liability limit because it did not specifically reference or analyze the term "Each Common Cause" in the Liquor Liability Coverage Part.

At bottom, AGLIC asserts that Aspen's total coverage pursuant to the policy is $2,000,000: $1,000,000 under the Liquor Liability Endorsement, and $1,000,000 under the CGL Endorsement. AGLIC asserts that the use of these two separate, non-overlapping liability bases identified by two different terms—"Each Location" and "Each Common Cause"—must create two separate and non-overlapping liability limits.

### 2. Aspen's Arguments

Aspen argues that the issue raised by AGLIC's arguments have already been decided by the Court's prior Opinion, and that AGLIC now attempts to obtain a favorable decision by misrepresenting how the excess-insurance policy works. In particular, Aspen avers that its own coverage limits do not, and cannot, direct AGLIC's coverage obligations to Dive Bar Diva ("DBD").[1] (ECF No. 90-1:4),

First, Aspen explains that AGLIC's coverage obligations depend on the coverage obligations of the first excess insurer, Colony. *Id.* at 8. According to Aspen, Colony has accepted the findings in the Court's prior Opinion, and has indeed satisfied its obligations to DBD. Therefore, AGLIC—as second excess insurer—is obligated to DBD to pay the remainder of excess coverage according to AGLIC's own policy. *Id.* at 9-11. In Aspen's view, AGLIC's representations to the contrary are bogus, and the Court need not entertain AGLIC's or even Aspen's arguments on this point. Aspen also points out that AGLIC had previously presented these same arguments in support of Colony's motion for judgment on the pleadings (ECF 46-2)—arguments that were considered and rejected in the Court's Opinion. *Id.* at 14.

Furthermore, Aspen avers there is only one Liquor Liability Coverage limit of

---

[1] Hereto, for the sake of brevity, the Court refers the parties to its prior Opinion for a detailed discussion related to the litigation involving DBD that is at the heart of these coverage issues.

$1,000,000, which is shared by all subscribers for all liquor liability occurrences during the coverage period, regardless of what term is used to describe the basis of coverage. As Aspen has previously put it:

> [T]he whole Aspen Policy is part of a "complex" but "cohesive" shared-risk program wherein hundreds of additional named insureds can access from Aspen up to a $10,000,000 Combined Total Aggregate Limit Cap which includes a $1,000,000 Liquor General Aggregate Limit; subject to a $2,000,000 Designated Location General Aggregate Limit which includes a Liquor Each Location Aggregate Limit of $1,000,000; and subject to a $1,000,000 per occurrence limit which includes a $1,000,000 Liquor Each Location Occurrence Limit. This reading accounts for all aggregate limits, coverage parts, and the plain language of the whole Aspen Policy.

(ECF No. 52 at 22.)

Aspen argues the plain language of its policy does not add the $1,000,000 Liquor <u>General</u> Aggregate Limit to the $1,000,000 Liquor <u>Each Location</u> Aggregate Limit to total $2,000,000 in Liquor Liability Coverage. These limits arise not from separate coverage bases. Rather, the Liquor <u>Each Location</u> Aggregate Limit is but a more specific description of the Liquor <u>General</u> Aggregate Limit. Aspen contends the **per occurrence** limit and the **per location aggregate** limit are both "subject to" the Liquor **General** Aggregate Limit of $1,000,000 and therefore both limits converge to the same coverage amount of $1,000,000 total. (ECF No. 90-1: 17-19).

Aspen avers the Sept. 2021 Opinion applied correct standards of contract interpretation and correctly construed the intersection and relationship of the CGL and the Liquor Liability <u>Declarations</u> and <u>Endorsements</u> to each other and within the policy as a whole. Further, AGLIC's contention of two, separate $1,000,000 liquor liability limits is not borne out by the plain language of the Aspen policy. Aspen's key argument is that the policy's plain language states that $1,000,000 is the most Aspen will pay for 'bodily injury' and 'property damage' arising from any and all 'liquor hazards', and that this language cannot support an interpretation

of a $2,000,000 liquor liability limit. *Id.* at 16.

**B.   RESOLUTION**

The Court need only look to its Opinion and the policy at issue to resolve the instant motion. In so doing, it is clear that the Court relied on the plain language in the policy and considered the context of the primary policy throughout its analysis. Nevertheless, the Court will again demonstrate how the Aspen policy as a whole does not ground separate and distinct liquor liability limits, thereby providing $2,000,000 in coverage as AGLIC claims.

The policy explicitly provides that it consists of the following coverage parts:

| COVERAGE PARTS | |
|---|---|
| This policy consists of the following coverage parts for which a premium is indicated this premium may be subject to adjustment | |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $1,232,000 |
| COMMERCIAL PROPERTY COVERAGE PART | N/A |
| LIQUOR LIABILITY COVERAGE PART | INCLUDED |
| TERRORISM PREMIUM | N/A |
| TOTAL ADVANCE PREMIUM DUE AND PAYABLE AT INCEPTION | $1,232,000 |
| Minimum retained audit premium: 100% | Minimum retained premium: 35% |

As shown above, the policy identifies two coverage parts: (1) a "Commercial General Liability Coverage Part" ("CGL"), for which the policy premium was $1,232,000, and (2) the Liquor Liability Coverage Part. The plain language of the word "INCLUDED" confirms that there is no additional premium for Liquor Liability Coverage. Even so, the CGL <u>expressly excludes</u> bodily injury or property damage <u>relating to liquor liability</u>. That is reinforced by the CGL Liability Coverage Declaration, which defines the terms and conditions triggering CGL coverage.[2] Likewise, the Liquor Liability Coverage Form (Section 1.1.a) defines terms and conditions that trigger liquor liability coverage and expressly extends coverage to the Shared Risk Program members for liquor liability. It states that Aspen "*will pay those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which the insurance*

---

[2] ECF No. 88, Exh. 21, Aspen Policy CR003UL15, Commercial General Liability Coverage Form, Section 2, pg. 2, which constitutes the Liquor Liability Coverage Form.

*applies if liability for such 'injury' is imposed on the insured <u>by reason of the selling, serving or furnishing of any alcoholic beverage.</u>"*

Thus, the Court confirms at the outset that Liquor Liability Coverage is <u>not</u> CGL Coverage, **but is rather included in the** CGL Liability Coverage Part (*i.e.*, the total CGL premium includes Liquor Liability). The policy therefore consists of two kinds of CGL coverages: CGL coverage proper, and Liquor Liability coverage subsumed within that. The Court also recognizes that terms and conditions of liquor liability coverage are defined by a different Form/Declaration, the Liquor Liability Coverage Form. Thus, the key to resolving these motions is assessing the relationship between the CGL Coverage Form and the Liquor Liability Coverage Form. More specifically, it requires the Court to determine whether and how that relationship determines the Liquor Liability Coverage limit—whether it is $2,000,000, as AGLIC asserts, or $1,000,000, as Aspen maintains.

Although the plain language of the Aspen policy subsumes Liquor Liability Coverage within the CGL Coverage Part, Liquor Liability Coverage is <u>not</u> the same as CGL Coverage.[3] The Court notes that the policy's express language carves out separate conditions and limits for Liquor Liability Coverage, even while it recognizes that the Shared Risk Program insureds have paid for liquor liability coverage in the overall CGL premium. The Liquor Liability Declaration, which expressly modifies the CGL Coverage <u>Part</u>, defines the conditions and limits of liquor liability coverage:

---

[3] This discussion relies on the Liquor Liability Form, ECF No. 88, Exh. 20, and the CGL Form, ECF No. 88, Exh. 21.

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| LIMITS OF INSURANCE | |
|---|---|
| EACH COMMON CAUSE LIMIT: | $ 1,000,000 |
| AGGREGATE LIMIT: | $ 1,000,000 |

The Liquor Liability Declaration uses the terms "Each Common Cause" and "Aggregate Limit," and sets each limit at $1,000,000. However, the Declaration does not spell out the relationship between the Aggregate and Common Cause Limits. On one hand, the Court recognizes the limits to interpreting the policy's total liquor liability limit using only the Liquor Liability Declaration. On the other hand, the Liquor Liability Endorsement Schedule amends this Declaration and clarifies there are three specific ways of calculating the liquor liability coverage limit, as shown in Table 1.

**Table 1: Liquor Liability Limits in the Declaration and the Endorsement Schedule**

| Liquor Liability Declaration | Liquor Liability Endorsement Schedule |
|---|---|
| Each Common Cause Limit: $1,000,000 | Liquor Each Location Occurrence Limit:   $1,000,000 |
|  | Liquor Each Location Aggregate Limit:   $1,000,000 |
| Aggregate Limit:   $1,000,000 | Liquor General Aggregate Limit:   $1,000,000 |

In determining whether a genuine dispute exists as to the application of standard principles of contract interpretation, the Court interprets the relationship between the Liquor Liability Coverage limits expressed in the Liquor Liability Coverage Declaration and in its amending Endorsement Schedule.

Importantly, the Court finds the Liquor Liability Endorsement Schedule limits are not additive, but calculated cumulatively relative to each other. This is evidenced by the plain language of the Endorsement (pp. 1-2¶D, Limits of Insurance, at paragraphs 1 through 3), which

expressly states that the most Aspen will pay for the Liquor General Aggregate coverage (Table 1 *supra*) for all bodily injury and all property damages included within the liquor hazard is $1,000,000. Put differently, when Aspen's pay-out under any or all of the three coverages in the Endorsement Schedule reaches $1,000,000 during the coverage period, Aspen's obligation for liquor liability coverage ends.[4] This is the single, most rational way to read the policy's plain language establishing how the Endorsement Schedule coverages work together to limit total liquor liability coverage for all subscribers and for all occurrences to $1,000,000.

Whether the term "Common Cause Limit" in the Liquor Liability Declaration expresses additional liability coverage limit over and above the kinds of inter-related coverages named in the Liquor Liability Endorsement Schedule invokes reliance on standard contract interpretation principles. This Court finds the plain language of the Aspen policy, taken as a whole, does not support two separate, liquor liability coverages totaling $2,000,000.

To the contrary, when read in conjunction with the Liquor Liability Endorsement Schedule, the Declaration's use of the term "Common Cause" unambiguously communicates a general liquor liability concept that applies to the terms "Liquor Each Location Occurrence" and "Liquor Each Location Aggregate" in the Endorsement Schedule. Of course, the term "Common Cause Limit" does not itself denote a liquor liability coverage limit separate from the combined limit contained in the Endorsement Schedule. But when read against the policy as a whole, its use is generalized and implies any liquor liability occurrence. Since the Liquor Liability

---

[4] Specifically: - when Aspen's disbursement for ALL liquor liability occurrences for ANY AND ALL locations reaches $1,000,000, the Liquor General Aggregate coverage ends;  OR
    - when Aspen's disbursement for liquor liability at ALL locations reaches $1,000,000, the Liquor Each Location Aggregate coverage ends; OR
    -when Aspen's disbursement for ALL liquor liabilities (regardless of the location) reaches $1,000,000, the Liquor Each Location Occurrence coverage ends.

Endorsement and its Schedule amends, and therefore defines, the liability limits in the Declaration, the most sensible construction is to read the Endorsement Schedule to be equating the concept of "Common Cause Limit" with the respectively particularized limits of "Liquor Each Location Occurrence Limit" and the "Liquor Each Location Aggregate Limit." *See* Table 1.

Thus, within the Declaration and the Endorsement Schedule, the Court finds equivalence, rather than distinction. The Declaration's use of the term "Common Cause" equates to the Endorsement Schedule terms of "Each Location Occurrence" and "Each Location Aggregate [Occurrences]"; and the Declaration term "Aggregate Limit" equates to the Endorsement Schedule term "Liquor General Aggregate." At its most plain, obvious, and unmistakable, the Aspen policy states: the most we will pay is $1,000,000 for any and all liquor liability coverages, which the Endorsement has specified as an occurrence at either one or any location, or for all occurrences at all locations.

There is no linguistic or semantic ambiguity in this statement in Aspen's policy. Such a plain statement completely belies a supposition that the term "Common Cause Limit" means anything other than the collective "Location" limits in the Endorsement Schedule. For that reason, AGLIC's interpretation that the Declaration term "Common Cause Limit" indicates an additional coverage limit of $1,000,000 separate from the Endorsement Schedule limit, is not, and cannot be, supported by the plain language of Aspen's policy, taken as a whole. Therefore, because "[i]nterpretation of an insurance policy is a question of law." *Beniak Enters., Inc. v. Indem. Ins. Co. of N. Am.*, 556 F. Supp. 3d 437, 442 (D.N.J. 2021) (citing *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 674 (3d Cir. 2016)), AGLIC's motion for summary judgment is denied and Aspen's motion is granted.

## VI.   CONCLUSON

Relying on standard contract interpretation principles,[5] the Court declares:

WHEREAS the Aspen policy premium shows the Liquor Liability Coverage <u>Part</u> is subsumed within the CGL Coverage <u>Part</u>;

WHEREAS the Liquor Liability <u>Declaration</u> identifies the Liquor Liability Coverage limit as a "Common Cause" Limit of $1,000,000;

WHEREAS the Liquor Liability <u>Endorsement Schedule</u> amends the "Common Cause" limit by calculating "Common Cause" in two ways: either as an occurrence at one location OR as all occurrences at aggregated locations, the total limit for either remains $1,000,000.

WHEREAS the plain language of the terms in the <u>Declaration</u> and in the <u>Endorsement Schedule</u>, taken together with Aspens' absolute maximum coverage liquor liability limit of $1,000,000, reveals no "genuine ambiguity" in equating the "Common Cause" term to the "Liquor Each Location Occurrence" or "Liquor Each Location Aggregate";

WHEREAS the Court's analysis shows that no genuine dispute of material fact exists or can exist because the Sept. 2021 Opinion indeed applied standard principles of contract interpretation and construed the policy as a whole thereby conclusively determining the total extent of Aspen's liability for the DBD litigation;

WHEREAS any of AGLIC's counterclaims were therefore resolved by the Sept. 2021 Opinion; and

---

[5] New Jersey jurisprudence demands when the terms of a policy are clear and unambiguous, a court must enforce the contract as written and may not make a better or different contract than that which the parties agreed to. *Stone v. Royal Ins. Co.*, 211 N.J.Super. 246, 248, 511 A.2d 717, 718 (App.Div.1986); *Flynn v. Hartford Fire Ins. Co.* 146 N.J.Super. 484, 488, 370 A.2d 61, 63–64 (App.Div.), *certif. denied* 75 N.J. 5, 379 A.2d 236 (1977).
  Even if terms could be viewed as having different meanings, an insurance policy is not ambiguous merely because litigants offer conflicting interpretations. *Rosario v. Haywood*, 351 N.J.Super. 521, 530–531, 799 A.2d 32, 38, 39 (App.Div.2002), *citing Powell v. Alemaz, Inc.*, 335 N.J.Super. 33, 44, 760 A.2d 1141, 1147 (App.Div.2000). A genuine ambiguity arises when the "phrasing of the policy is so confusing that the average [excess insurer] cannot make out the boundaries of coverage." *Lee v. General Accident Ins. Co.*, 337 N.J.Super. 509, 513 (App.Div.2001).

WHEREAS AGLIC is not owed a reimbursement by Aspen for $1,000,000.

Accordingly, the Court **DENIES** AGLIC's motion for summary judgment (ECF No. 88), **GRANTS** Aspen's motion (ECF No. 90) and **ORDERS** that the September 2021 Opinion (ECF No. 62) stands as is in its entirety and that, as the parties' disputes have been wholly resolved both by the Court's Sept. 2021 Opinion and this Opinion, the Clerk of the Court shall close this matter.

September 25, 2025

Joseph H. Rodriguez, USDJ